All rise. The Illinois Appellate Court, First Division, is now in session. Honorable Justice Sheldon A. Harris, presiding. Please be seated. Welcome. I hope everyone is thawed out. Welcome to the Appellate Court. Clerk, would you please call the first case? Okay. Thank you. Would the attorneys that are going to orally argue please approach the bench? Okay. Attorney for Appellate, would you identify yourself, please? Daniel Wills. Mr. Wills, you are the appellee. And I am Peter Saragelis for Pekin Insurance, accompanied by Robert Chemers and Jonathan Federer. Okay. But you will solely be arguing for the appellee? Yes, sir. Okay. We're going to allow both sides 20 minutes. Appellant, reserve from that period of time whatever you want to say in reply. I'm really not going to watch the clock that tight on you. We only have one case this morning. We want you to fully argue your case. Now, one further admonition. These microphones are not for amplification. They're solely recording devices. So if you want to make sure that the entire panel can hear you and those in the back, I suggest that you keep your voices up. You won't be insulting anybody by talking loudly. We want to hear your case. Okay. Appellant, you may proceed. May it please the Court, do on your words on behalf of the appellants, Sentex Home and Sentex Real Estate, may I reserve three minutes for rebuttal? Go right ahead. Thank you. Would you please close the door? Thank you. But proceed, counsel. I'd like to start with the additional insured endorsement in the Pekin policy. Pekin claims it doesn't provide coverage to Sentex Homes and Sentex Real Estate because the underlying no-reliant complaint doesn't allege that Sentex have the right to supervise or control McReel, McReel is the name of the insurance, and because the underlying no-reliant complaint doesn't raise allegations of liability against McReel. Both those arguments fail. First of all, on the- You're skipping right to, you're skipping, you're assuming that one or both of them is an additional insured and now you're saying there is a duty to defend. Oh, that's right, that's right, that's right. No, I think the focus should be on the duty to defend. Okay. As for Pekin's argument that there are no allegations that Pekin had the right to supervise or control McReel as well, the complaint, excuse me, the complaint says in paragraph four- That they failed to supervise. That they had a duty to supervise and control. In the paragraph 7G, it says that they breached their duty by failing to control and supervise McReel. Right, but that would just give them, I mean, that could be a basis for 414 liability, which is, in fact, as the Supreme Court just made clear, direct liability, not vicarious liability. Correct? I'll move on to the rest of it. Does the policy of insurance even cover vicarious liability? I'm sorry, Your Honor. Does the insurance policy cover vicarious liability? It does. The endorsement says that it covers vicarious liability. So the question is, is vicarious liability alleged or potentially alleged? It's certainly not directly alleged. You would agree with that? It is alleged. If that's potentially alleged. There's nothing that says that there was negligence by McReel. There's nothing that says that they're vicariously liable for something McReel does. There's no direct allegations. That is correct. However, in the Rosette case, which Pekin relies upon regarding the allegations of supervision and control, first of all, the endorsement in that case, which was for liability incurred solely as a result of some act or omission of a name to ensure, the court said, that is much narrower than the imputed liability, vicarious liability endorsement we have here. In addition, even there, the court said, while allegations of the general right to supervise are not enough to create vicarious liability, the right to supervise, the allegations of the right to supervise details of the subject would be enough to create vicarious liability. And where are the allegations of the right to supervise details? Well, I would submit, Your Honor, that when the... Let me hear about it. Let me hear about it. I disagree. The plaintiff was injured when the balloon wall fell on him. Right. The complaint alleges McReel built that balloon wall. Right. And the complaint alleges, in paragraph 7G, not a general right to supervision. It says that since it's failed to properly control and supervise the work of its subcontractor, McReel, in the erection of the building, and in particular, the balloon wall, referred to in the complaint. Did Semtex retain any control over the details of McReel's work? That's what the complaint alleges, yes. It doesn't use the word details. It doesn't list any details. Well, let me ask you this, counsel, because this, to me, is the key. Where's the limit? If you don't have to allege negligence by the named insured, you don't have to allege details of the operative details, where's the limit in your view of, because these all depend on there being vicarious liability, what has to be, in your mind, in the underlying complaint, to trigger additional insured coverage? Well, what I just said, I believe, is enough detail, but I don't need that. I will move on to get to your point. And first let me say that to the extent that there's no coverage under this endorsement, unless the complaint alleges negligence against the subcontractor named insured, this court should just clean up the mess by finding that it doesn't apply when the named insured is the operative. Because of workers' compensation. Why would the plaintiff not? I think that the court pretty much said that, and I know your opposing counsel disagrees, but I think we said that in CSR. I think we said that. You're a step ahead of me, Your Honor. I was going to get to CSR. We'll talk about that. Yes. Pekin says in their brief, and I quote, that in CSR the underlying complaint specifically stated that the named insured failed to provide safety equipment. That's not true. Every allegation laid out from the complaint in CSR was against CSR, the additional insured. What the court, and the issue there was, the plaintiff fell because they didn't have proper equipment. So it was a question of whether OSHA was violated. The complaint alleged that CSR violated OSHA. It didn't allege that the subcontractor did. In effect, the court said. I agree with you, counsel. I need to know where you see the limit. I really do. Where do you see the limit? Well, it is, and I think, I agree with you that CSR says that you do not have to allege negligence against the named insured. I agree with you. So if that's not the limit, where is the limit? And I'm not trying to argue with you either. You're just a step ahead of me. Okay. Let me catch up. Let me quote from CSR on that point first. The court said, although the elements of a negligence claim were not specifically alleged against the subcontractor, the complaint suggests that the subcontractor's actual omissions were an underlying cause of injuries. Thus, it was at least possible that the additional insured sub, or that the additional insured contractor, could be found vicariously liable for the subcontractor's failure to ensure compliance with OSHA regulations when, of course, there were allegations that the sub didn't comply. And what I'll say, here's the limit, Your Honor. If the one-minute complaint simply said that CENTAX failed to supervise the subcontractor, I would still argue that there should be coverage. But let's assume, for the sake of argument, that that's not enough. This is what's enough, comparing this case to CSR. In CSR, they inferred that the sub must have been negligent in not filing OSHA. Based on the allegations, the work allegations, here we have the same thing. That's right. It's stronger here. The complaint says that McGreel was injured when the balloon wall fell on him. It says that McGreel erected the balloon wall. Now, it may not have used the word negligence against McGreel, but my gosh, what else could it be? This court can certainly infer that it was McGreel's negligence that caused the balloon wall to fall. So that's step one. And then what's the limit on step two, which is the additional insurer's vicarious liability for that alleged negligence? What is the minimum that the underlying complaint has to allege to trigger that? Because you need both. You need negligence by the named insurer, and you need vicarious liability by the additional insurer. Right. And those don't necessarily go together. You could have one without the other. Right. And so in CSR, you could have had a finding that the only direct allegations of negligence were in CSR. So I guess the court could have said that's not enough. But the court inferred, given that the employee – and this sort of gets back to my point about why none of this makes sense when it's the employer. Right. It didn't follow that, as well as CSR in not properly supervising and controlling. Here's a good example of the difference, Your Honor. If the balloon wall had fallen in this case and injured Norvac, but McGreel didn't build the balloon wall, I'd have a real problem. But I don't have that problem because it says McGreel built the balloon wall. They must have been negligent because it fell on the play net. And it says that we didn't control and supervise McGreel in building that balloon wall. It's direct negligence against Sentex. And it's got to be vicarious. It's direct negligence by McGreel. Well, the allegations are direct negligence against Sentex, which is all the plaintiff can do. And there are allegations this court can infer, as it did in CSR, because it's the balloon wall McGreel built, that McGreel was negligent. Of course Sentex can be held vicariously liable if it's their agent. And it's only their agent if they retained operative control over McGreel. Which takes us back to where the allegations of fail to properly supervise, direct, and control McGreel are completely negligent. And it even goes further, and it specifically says that Sentex failed to control and supervise McGreel's work in erecting the balloon wall. I don't know how much more specific it could be to trigger vicarious liability. I'll go so far as to say if there's not vicarious – the court could have not found vicarious liability in CSR, but it did find it. If there's vicarious liability that's there, there's got to be vicarious liability that's there. But according to what we're reading here, it says this insurance doesn't apply to liability for bodily injury or property damage arising out of or in any way attributable to the claim negligence or statutory violation of the additional insured other than vicarious liability, which is imputed to the additional insured solely by virtue of the acts or omissions of the named insured. Exactly. And that's the same endorsement that most of these speaking cases, including CSR, with all of them said their endorsement. So here we have direct allegations, so you have that part of it, against Sentex that it was negligent in controlling and supervising McGreel. And you have allegations that it was McGreel that built the balloon wall which caused the injury. The only thing we don't have here – if the – what that complaint said in making its allegations about McGreel and the balloon wall, that McGreel was negligent in doing that, we wouldn't be here. We could, I think, even agree that this is true. So all we're missing is the word negligence. Now, the word negligence wasn't in CSR, and that was still good enough. And, again, why would the plaintiff know that there was negligence against McGreel when he can't sue McGreel? If he could, he would sue McGreel. So this is – I'm not going to go so far as to say illusory federal, but I think that's what it turns out to be when it's the employer who is the named insured. But this case is no different than CSR. In fact, it's better. It's stronger. So you would argue it's controlled by CSR in the sense that the outcome – All I can do is go with what the allegations of the complaint are. And the complaint says that CSR controlled and supervised the work of McGreel in building the balloon walls. That's specific. And it also registered the balloon wall fell on the worker that injured him. So, again, we're missing the word negligence, I guess, but we don't need it. And if we do need it, then CSR was wrongly decided. And this endorsement will never provide coverage to a named insured when the additional insured is an employer. And that can't be the purpose, right? Otherwise, there's no coverage. What else would you want coverage for other than getting hit with the wire board of your subcontractor? Because that's what the construction business and insurance is all about. And, again, we have direct allegations regarding that balloon wall that McGreel built and that injured a plaintiff. Okay. Pekin also argues that because the contract – because there was no purchaser issue for this project, there was no contract. Although it's curious because in CSR, the case we've just been talking about, the insured seeking coverage argued that this court – that the court should consider the terms of the contract in deciding coverage on the endorsement. Pekin fought against that. They told the court, no, you cannot look at the terms of the contract when you're construing our endorsement. Here they're doing the exact opposite. They want to parse the contract to say that because a purchaser may not have had an issue, there was no contract. In fact, Pekin puts it – If there was no contract, what's the privilege in the engagement? There was a contract. The circuit court – the circuit court said the contract is still there without a purchaser. And the contract required insurance for some times. Pekin is saying there was never a contract until a purchaser was issued. And the circuit court said no. You're trying to make the same argument, however, as to centric real estate. You're trying to make us look at the contract as opposed to the endorsement, which says you must be a signatory to a contract. Well, that's on the – that's a separate issue as to centric real estate. That's what I'm saying. You're making the look at the contract argument as to centric real estate. No, actually – Well, because the endorsement says you have to be a partner to the contract. Yes. I mean, what I'm asking you to do on centric real estate is to look at what you always look at. I mean, you have to look at the contract to see if it required that they be named as an additional insurer, because the endorsement says unless you require the name as an additional insurer, they're not. And our contract says you have to name centric real estate. It also says would you and such person or organization have agreed in a written contract, which suggests that there has to be a contract between you and the person you're trying to bring in as an additional insurer. I agree with that rather. And centric real estate did sign the contract. I understand the argument about being an agent. And, you know, frankly, I'm not going to argue that one as hard as I love the others. That's for the best. That's a good move. But I do want to go back to the purchase order. The contract was in effect. It says that purchase orders and other documents can be issued for various projects or none. So to say that there was never a contract because a purchase order wasn't issued down the road, here's the backwards. There's a contract, and then a purchase order made an issue. Pekin says, you know, the question to President Pekin is, was the contract in effect or simply in existence? It also meant that when an insurance company raises metaphysical questions about coverage, you can be sure of one thing. There's coverage. And the circuit court properly found that that argument was a red herring. There's a contract in effect. Whether or not a purchase order was issued down the road or not. Do you know if the circuit court had CSR at the time you argued? I think the circuit court decision was decided just shortly before CSR, so I assume it wasn't probably brief. I think that's correct, but it can't be 100 percent. Sir, are there any other questions? The real estate corporation, the circuit court found that they were not a party to it. They were acting solely as an agent. Yes. Are you still maintaining their additional insurance? You've briefed it. It's in your reply. I am still maintaining that. What's your strongest argument in that direction? My strongest argument in that is that the contract says that centex real estate has to be named as an additional insurer on the peak in policy. That's my strongest argument. But I'll say it again, I regularly pay attention to that argument. There are so many cases out there saying that once the principle's disclosed, the agent is relieved. I can't disagree. You'll have ten minutes for rebuttal. Thank you. Good morning, everyone. Peter Sergis on behalf of PECAN. I want to first mention one thing. Counsel makes the representation that the underlying complaint specifically alleges that McGreal built the balloon wall. I mean, I'm looking at that allegation. I looked through the record last night preparing for this oral argument. I don't know that that allegation in the underlying complaint makes that specifically clear, and I don't think anywhere else in the record bears that out. But I do want to move on to Justice McFa's, I think, greater concern, which is the link-up and possibly a juxtaposition of this case to CSR. CSR did allege vicarious liability imposed to the additional insured through the negligent act of the named insured, and here's the allegation that I'm reading from the case. It's at pinpoint site, paragraph 12 of the case. The allegation is that CSR, paragraph H, subparagraph H, failed to require the subcontractor, Zanistel, to comply with OSHA regulations. That, to me, is the link-up. It suggests that Zanistel didn't comply with the OSHA regulations. Correct. That's what it suggests. Correct, but it also alleges that CSR failed to make certain. Require. Correct, and that's the link-up, I think, that's missing from this underlying complaint. On which part? On the negligence by Zanistel or on the right to control the operative details by CSR, or both? On the right to control the operative details on CSR. Is that an operative detail? I don't know. I think it certainly is. Counsel says that this case is actually stronger for finding coverage than CSR is. I don't think it is. I think that that allegation in CSR is stronger than what we have here. You know, here's honestly the problem for both of you. All these cases are really difficult to distinguish. They're all kind of the same. They all have basically bare bones allegations in the underlying complaint where they're not thinking about coverage. They're excluding their own employer because of comp and preemption, and so they don't really tell you what the relationship is between the sub and the general, or the insured and the additional insured. They don't really tell you in great detail exactly what happened. I mean, you can make a distinction. I see that, but I think that this Court answered that question in Pekin v. UPS. It said there's nothing stopping the plaintiff from alleging a different theory of liability, and that's what's absent from this underlying complaint. There's no theory of liability that falls within the strict parameters of this additional insured endorsement. I mean, this thing covers a very, very narrow thing, and that's vicarious liability. Okay. Before going to that, let me ask you directly the question that your opposing counsel alluded to. Why is this not at least in the context of somebody working for their employer, where the main insured is the employer? Why isn't this illusory coverage? When would this coverage ever come into play, in your view, where the direct liability, the direct negligence was by the employer? Give me an example, any example. An example would be, I'll use CSR, a roofing contractor failing to provide safety equipment to a roofer. He fell off the roof, and then there's the link-up regarding the… Okay, so the direct liability by, okay, so CSR… A negligent act, and I think that this Court's third district made that clear in United Contractors. Oh, so you're going back to there has to be a specific allegation of a negligent act by the main insured? A negligent act, but I never left it, yes. Okay. You're disagreeing with me that CSR says that's not true. The CSR says suggests. It doesn't say you have to allege a negligent act. It says, in fact, what it says is, although the elements of a negligent claim were not specifically alleged against Sam Still, that's what it says. Okay. I would say… Not specifically alleged. Correct. I would say that there needs to be a direct allegation of negligence. Is direct different than specific? Because she says not specifically alleged. Specific. I would side with United Contractors in this Court's Pekin v. Rozak. Okay. But this is a more recent decision of this Court, and it says not specifically alleged. Sounds to me this is the second fight in the air, but with CSR. Right. Well, I… How many fights do you want on this issue? I don't know. So let's assume that it doesn't need to be specifically alleged. Okay. Let's presume that. Then you go to whether or not the named insured, forgive me, the additional insured faces liability imposed vicariously through the acts of the named insured. There has to be that linkup, and that's missing from this case, and perhaps existed in CSR, and I think that's the distinguishing factor. So there's nothing in the underlying complaint that would indicate vicarious liability? Correct. That's our contention, yes. Is there an amended complaint? I believe this complaint before it arrived to this Court was amended twice, yes. So there was an original complaint, a first amended, and we're now on the second amended. Motions for summary judgment? There were motions for summary judgment, right. And that's the other thing. And this is a summary judgment case. It certainly is. There were cross motions for summary judgment. Right. Yes. There were cross motions for summary judgment. The parties have submitted the case to the trial court. But I think you both agree it's de novo because it's strictly legal issues. It's certainly de novo, yes, of course. It's de novo. You know, the trial judge issued a nine-page opinion, which is in the record. You know, well-reasoned, I think. Except for one part. Well, I guess I'll get to that now. With respect to, I think the issue for today with respect to whether or not sentenced real estate falls within the parameters of this additional insurer endorsement due to the absence of a written contract, I think it's foreclosed. The disclosed principle, as Justice Harris brought up, I think that's out. As far as the purchase order in the brief, in the sentences brief, they refer to what's in the record at C1114 as a purchase order. It's simply not. It's a contract price schedule that sentenced real estate could order from. And, you know, get McGreal to perform some work. I don't see the purchase order in the record. And our contention is that without that purchase order, the contract was never actually completed. I mean, I'm not sure there's a purchase order, and certainly the trial court didn't find there was a purchase order. He just said that's not a condition present. He did. And why would it be a condition present? Well, because that gets them to the job. I mean, the contract was performed, correct? The contract was performed. And they did get to the, yeah. I mean, the building was built. The building was built. Then we would not be here. Right. The building was not built. We would certainly not be here. Okay. I want to go back to the illusory coverage question. So the reality is, is it not, that in all these cases, the contract between the parties, the reality of the situation is generally they've been insured as an independent contractor. Generally speaking, they're not an agent of the additional insurer, correct? Yes. That's the relationship. That was true in CSR, correct? Yes. So why is this not illusory coverage? This isn't illusory coverage because the additional insured endorsement is drafted for a very specific circumstance. It was never intended by the insurance industry to enlarge or to add parties to the contract. The additional insured hasn't paid a premium. I understand. There wasn't ever intended to be an increasing risk. What this situation covers, or what this additional insured endorsement covers, is the very specific circumstance of an additional insured controlling the details of the named insured's work. When does that ever happen? It does. It most certainly does. There have been cases that have found coverage. There have been cases that have not found coverage. Can you give me a relationship in which that would happen, in which you would agree that they're an agent? General contractor that hires a SAB says, I use a balloon wall as an example, build a balloon wall, use this type of harness for the people that are erecting it, guy falls, gets hurt. So on this particular issue where the injury occurred, there is a great deal of maintenance of control by the named insured. There has to be some control in order for liability to be imposed, yes. Some unusual amount of control. Correct, and that's the Rosak case. Okay. I don't know if that's the Rosak case, but okay. How do we know, based on the allegations of the underlying complaint, whether that control is there? Why would that be alleged in the underlying complaint? It would be alleged because it's another theory of liability for the plaintiff to recover under, and that's why Pekin versus UPS said there's nothing stopping the plaintiff from alleging that theory, and without that theory, the additional insurance endorsement simply doesn't apply. So the line that you would want to see drawn is that there have to be some specifics, if not specifically alleging negligence by the named insured, which I think is out under CSR, specific allegations of the amount of control. Some control, yes. There's some control. There's some control in all these cases. You want specific allegations of the amount of control. Specific allegations. Correct. Okay. Are there no further questions? Thank you, counsel. I ask that the trial court be affirmed. Thank you. Just a couple brief points. On this issue of how much control has to be alleged in a complaint, I'd like to point out that the court construes the allegations of the complaint in favor of the insured, not the insurance company, and unless the allegations of the complaint procure the possibility of coverage, there's coverage. So if we're going to talk about, if we're going to parse how much control has to be alleged, we win. Control is alleged in the complaint. Supervision is alleged in the complaint. That's enough under the law. The only other point I want to make is just look at this, counsel. What are we relying on to say that CSR is different? And counsel cited Paragraph H where it says that the general edit failed to require the subcontractor, DeMasto, to comply with OSHA regulations. Failed to make sure the sub complied with OSHA regulations. Sort of like here, Paragraph 7G where the allegation is that CSR failed to properly control and supervise the work of its subcontractor, Magrillo, in the erection of the building, and in particular the building while referring to the complaint. Seems a little more specific to me. Thank you for your time, Your Honor. Counsel, one parting comment I'd like to make. In your brief, you cited Pekin v. Hawk, which is a Rule 23. Yes, Your Honor. Just as a matter of courtesy to you, I want to say that we're going to overlook that briefing. But I want you to know for the future, I have colleagues, I have colleagues who are going to be present with this situation. And I want you to know that if they were presented with this situation, would tear up your brief and not even read it because of that act. Understood. Understood. And I again apologize. Well taken. Your apology is well taken. Thank you. And accepted. And accepted. And accepted, yes. Case number 15-3601, Pekin Insurance Company v. Centrix Homes and Centrix Real Estate Corporation is taken under advisement. This court is adjourned.